IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DONNIE JOE BACON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-510-W |
| | ) | |
| MARTY SIRMONS, WARDEN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**REPORT AND RECOMMENDATION**

This Court should issue a conditional writ of habeas corpus.

Mr. Donnie Bacon was charged in state court with the abuse of two boys. The evidence on these charges occupied relatively little of the trial, as most of the testimony involved Mr. Bacon's abuse of another child who ultimately needed C.P.R. and underwent examination by a medical examiner, break-ins into a former girlfriend's home, violence against multiple adults, and threats to injure or kill a woman and two children. Not surprisingly, Mr. Bacon was convicted.

On direct appeal, the state's highest criminal court held that the evidence of other crimes was unfairly prejudicial and inadmissible. Even the Respondent does not defend the state trial judge's evidentiary rulings. Instead, the Respondent argues that the Petitioner would have been convicted even without the rulings. The Respondent may or may not be right, but Mr. Bacon lacked any realistic opportunity to refute the charges in light of the

onslaught of inadmissible, prejudicial evidence of uncharged misconduct. The absence of fundamental fairness entitles Mr. Bacon to a conditional writ of habeas corpus.[1]

I. Standard for Habeas Relief

As discussed below, the dispositive issue is whether the trial judge's evidentiary errors denied fundamental fairness to Mr. Bacon. The state appellate court did not address that issue, and the federal district court should exercise its independent judgment.[2]

II. Test of Fundamental Fairness

The state appeals court conceded the presence of numerous evidentiary errors by the trial judge. These errors involved: (1) introduction of evidence that a medical examiner had investigated the injuries to C.D., who was the child of Mr. Bacon's former girlfriend; and (2) admission of evidence "showing that [Mr. Bacon had] physically abused children of both genders and of various ages as well as adults of both genders in his family and outside of it in a variety of ways over a period of approximately seventeen years . . . ."[3] The state appeals court concluded that some of the errors were "clear" and others entailed "prejudicial impact"

---

[1] In the habeas petition, Mr. Bacon also claims ineffective assistance of counsel, prosecutorial misconduct, and nondisclosure of evidence. The Court need not address these claims in light of the fundamental unfairness of the trial.

[2] *See Knighton v. Mullin*, 293 F.3d 1165, 1171 (10th Cir. 2002) (applying *de novo* review over a habeas claim when the Oklahoma appeals court applied state evidentiary rules without specifically addressing whether the rulings constituted a deprivation of due process).

[3] *Bacon v. State*, Case No. F-2001-1224, slip op. at 3 (Okla. Crim. App. June 29, 2004) (unpublished op.) (citations omitted).

that "far outweighed" any probative value.[4] The court affirmed the conviction notwithstanding the presence of these evidentiary errors.[5]

Mistakes involving state law alone would not entitle Mr. Bacon to federal habeas relief.[6] To justify such a remedy, the Petitioner must demonstrate that the evidentiary errors were "so unduly prejudicial that [they] render[ed] the trial fundamentally unfair . . . ."[7] The issue turns on "whether the jury could judge the evidence fairly" with the erroneously admitted evidence.[8] The Court should answer in the negative.

III. The Trial That Should Have Taken Place

Mr. Bacon was charged with discrete acts of abuse on two boys, B.B. and J.R. As the state appellate court suggested, the trial should have been restricted to the actual charges.

A. Evidence of Abuse Involving B.B.

B.B. was eleven years old at the time of the alleged abuse.[9] The Petitioner admitted that B.B. had head injuries, but denied causing them.[10] B.B. said that the mark on his

---

4 *Bacon v. State*, Case No. F-2001-1224, slip op. at 3 (Okla. Crim. App. June 29, 2004) (unpublished op.) (citation omitted).

5 *Bacon v. State*, Case No. F-2001-1224, slip op. at 1-3, 5 (Okla. Crim. App. June 29, 2004) (unpublished op.).

6 *See Bullock v. Carver*, 297 F.3d 1036, 1055 (10th Cir. 2002).

7 *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (citation omitted).

8 *Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003) (citation omitted).

9 I Trial Transcript at p. 33 (Oct. 1-2, 2001) (B.B.'s testimony).

10 II Trial Transcript at pp. 186-87 (Oct. 3-5, 2001) (defense counsel's closing argument).

forehead had been caused by a bicycle wreck and that he had been hit with an open hand[11] "[b]y accident."[12]

B.B. also attributed his busted lip to blows struck by Mr. Bacon with a closed fist.[13] But Mr. Bacon's brother testified that he was present at the relevant time and:

- saw B.B. fall and bust his lip on a bicycle on the day that he was allegedly abused,[14] and
- Mr. Bacon disciplined B.B., who became angry and threatened revenge.[15]

B. Evidence of Abuse Involving J.R.

J.R. was six years old when he was allegedly abused.[16] On the count involving this child, witnesses included J.R., B.B., and Mr. Bacon's brother.

The State's theory was that the marks to J.R. appeared only after he had been left in Mr. Bacon's care.[17] J.R.'s testimony was conflicting. He stated that he had been beaten up

[11] I Trial Transcript at pp. 38-39 (Oct. 1-2, 2001).

[12] I Trial Transcript at pp. 37-38, 42-43, 48 (Oct. 1-2, 2001).

[13] I Trial Transcript at p. 39 (Oct. 1-2, 2001).

[14] II Trial Transcript at pp. 146-47, 152-53 (Oct. 3-5, 2001).

[15] II Trial Transcript at pp. 147-48 (Oct. 3-5, 2001).

[16] I Trial Transcript at p. 64 (Oct. 1-2, 2001) (J.R.'s testimony).

[17] I Trial Transcript at p. 24 (Oct. 1-2, 2001) (prosecutor's opening statement); II Trial Transcript at pp. 171, 179-80 (Oct. 3-5, 2001) (prosecutor's closing argument).

by Mr. Bacon at an unspecified time.[18] But J.R. also testified that he had hurt his head by falling off of monkey bars.[19]

B.B. addressed the matter, but gave conflicting testimony about whether Mr. Bacon had hit J.R. For example, B.B. testified that Mr. Bacon had hit J.R. when "[h]e was about four."[20] But B.B. also testified that he had only seen Mr. Bacon strike J.R. once "[o]n the butt," when he "got in trouble."[21] According to B.B., J.R. had also been hit by his mother.[22]

Finally, Mr. Bacon's brother testified that J.R. had a scar on the back of his head long before the period in which he was allegedly abused.[23]

C. A Swearing Match

For both counts, the issue of guilt turned on a classic swearing match.

In evaluating the State's allegations, the jury could legitimately consider:

- B.B.'s testimony that he had been hit by Mr. Bacon,[24]

---

18 I Trial Transcript at pp. 66-69 (Oct. 1-2, 2001).

19 I Trial Transcript at pp. 74-75 (Oct. 1-2, 2001).

20 I Trial Transcript at p. 49 (Oct. 1-2, 2001). The State's theory was that J.R. was six years old when the abuse took place. II Trial Transcript at p. 171 (Oct. 3-5, 2001) (prosecutor's closing argument).

21 I Trial Transcript at pp. 40-41, 47-48 (Oct. 1-2, 2001).

22 I Trial Transcript at p. 40 (Oct. 1-2, 2001).

23 II Trial Transcript at pp. 149-50 (Oct. 3-5, 2001).

24 I Trial Transcript at pp. 36-37, 39, 42 (Oct. 1-2, 2001).

- testimony that B.B. told police that he had been repeatedly hit by Mr. Bacon,[25] and

- scarring on J.R. and likely traumatic brain injury.[26]

Of course, the jury might also have resolved the dispute favorably to Mr. Bacon in light of:

- testimony by Mr. Bacon's brother that he had heard B.B. threaten revenge against the Petitioner,

- testimony by B.B. that he had hurt his head by falling off of a bicycle,

- testimony by B.B. that he had accidentally been hit by his father with an open hand,

- testimony that J.R. had been hit by his mother, and

- testimony by Mr. Bacon's brother that he had seen B.B. bust his lip on a bicycle and that J.R. had a scar on his head long before the time-period at issue.

The jury ultimately resolved the dispute in favor of the State. The outcome might have been the same if the trial judge had appropriately confined the evidence to the offenses that had been charged. But she did not do so.

## IV. The Trial That Actually Took Place

The actual trial involved evidence of countless crimes allegedly committed by Mr. Bacon. Only two of these crimes were charged.

At the trial, the judge allowed the prosecutor to present evidence involving:

---

[25] II Trial Transcript at p. 63 (Oct. 3-5, 2001).

[26] II Trial Transcript at pp. 105-107, 112-13, 124-25 (Oct. 3-5, 2001).

- threats by Mr. Bacon to kill his former girlfriend and her children,[27]
- break-ins into the home of Mr. Bacon's former girlfriend,[28]
- violence against another child, only two years old, which involved throwing him against the wall and slamming him into a knee,[29]
- the necessity of C.P.R. for the two-year-old and a subsequent "rul[ing]" by a medical examiner,[30]
- threatened violence against a five-year-old girl if she told anyone about the injuries to the two-year-old,[31]
- threats to kill a neighborhood boy if a five-year-old girl disclosed the violence against the two-year-old,[32]
- threats to beat up a girlfriend after the arrest,[33] and
- violence against multiple adults.[34]

The state's highest criminal court found numerous errors in these rulings, relying in part on the unfairly prejudicial character of the State's evidence.[35] Against this backdrop, the

---

27 I Trial Transcript at pp. 73, 112 (Oct. 1-2, 2001).

28 I Trial Transcript at pp. 113-14 (Oct. 1-2, 2001).

29 I Trial Transcript at pp. 125-28, 149-50 (Oct. 1-2, 2001); II Trial Transcript at pp. 72-73, 138-39 (Oct. 3-5, 2001).

30 II Trial Transcript at pp. 80, 84, 87-88 (Oct. 3-5, 2001).

31 I Trial Transcript at pp. 124-25, 127-29 (Oct. 1-2, 2001).

32 II Trial Transcript at pp. 75, 77 (Oct. 3-5, 2001).

33 I Trial Transcript at pp. 155-56 (Oct. 1-2, 2001).

34 I Trial Transcript at pp. 42, 97 (Oct. 1-2, 2001).

35 *Bacon v. State*, Case No. F-2001-1224, slip op. at 1-3, 5 (Okla. Crim. App. June 29, 2004) (unpublished op.).

federal court must decide whether Mr. Bacon had a fundamentally fair trial notwithstanding the pervasive evidence of uncharged[36] violence and threats. The Court should answer in the affirmative. Conviction was inevitable regardless of the guilt or innocence of Mr. Bacon on the discrete acts that were charged.[37]

## V. The State Appellate Court's Rationale and the Fundamental Unfairness of the Trial

Conceding multiple evidentiary errors, the state appeals court affirmed on grounds that the trial judge's mistakes had not contributed to the guilty verdict.[38] By definition, this holding constituted a determination that the errors were harmless.[39] Constitutional errors can be harmless in certain cases,[40] but not in this one.

---

36 In opening statement, the prosecutor intimated that the State had not charged Mr. Bacon with the two-year-old's abuse only because of the statute of limitations:

> There were threats that were made to [N.D.] about telling. She didn't – for three and a half years this kid kept her mouth shut. The statute of limitations for child abuse is three years. She didn't talk about it for three and a half years because Donnie Joe Bacon told her what would happen to her if she did.

I Trial Transcript at pp. 28-29 (Oct. 1-2, 2001).

37 *See Gonzales v. Lytle*, 167 F.3d 1318, 1321 (10th Cir. 1999) (holding that the trial was fundamentally unfair, acknowledging that the jurors might have convicted without the evidentiary error but pointing out that they had not been "given that opportunity").

38 *Bacon v. State*, Case No. F-2001-1224, slip op. at 1-3, 5 (Okla. Crim. App. June 29, 2004) (unpublished op.).

39 *See Lott v. State*, 98 P.3d 318, 341 (Okla. Crim. App. 2004) ("this error is harmless as we find beyond a reasonable doubt that the error did not contribute to the verdict or sentence" (citation omitted)).

40 *See Neder v. United States*, 527 U.S. 1, 8-9 (1999).

The constitutional issue here is whether the evidentiary errors deprived Mr. Bacon of a fundamentally fair trial. The strength of the evidence was one factor, but was not the only one.[41]

Because "there are no clearly defined legal elements" to "fundamental fairness," the habeas court considers the relevance of the objectionable evidence and the strength of the permissible evidence to decide whether the State "could have" obtained "an unfair advantage."[42]

Even in affirming the conviction, the state appellate court acknowledged that the "prejudicial impact" of the inadmissible evidence had "far outweighed" any probative value.[43] The prosecutor unquestionably gained an unfair advantage by the introduction of massive evidence involving uncharged violence and threats on the part of Mr. Bacon.

This trial was fundamentally unfair to Mr. Bacon. And "once a showing of fundamental unfairness is made, a petitioner is entitled to habeas relief without an assessment of harmless error."[44]

---

41 *See Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003).

42 *Spears v. Mullin*, 343 F.3d 1215, 1226 (10th Cir. 2003).

43 *Bacon v. State*, Case No. F-2001-1224, slip op. at 3 (Okla. Crim. App. June 29, 2004) (unpublished op.) (citing Okla. Stat. tit. 12, § 2403 (2001)).

44 *Spears v. Mullin*, 343 F.3d 1215, 1230 (10th Cir. 2003) (citations omitted).

VI. The Appropriate Remedy

The Court should grant a writ of habeas corpus, conditionally upon the filing of an appropriate pleading in state court to retry Mr. Bacon.[45] If the State fails to file such a pleading within 90 days of an order adopting this report, the Court should grant Mr. Bacon's request for habeas relief without further conditions. The Court should retain jurisdiction so that it can enforce the conditions prior to issuance of a writ of habeas corpus.

VII. Notice of Right to Object

Any of the parties may object to this report and recommendation. To do so, the party must file an objection with the Clerk of this Court. The deadline for objections is April 6, 2006.[46] The failure to timely object would foreclose appellate review of the suggested ruling.[47]

VIII. Status of the Referral

The referral is terminated.

---

45 *See Bowen v. Maynard*, 799 F.2d 593, 614 n.12 (10th Cir. 1986) (dictum) ("Generally, a district court ruling in the petitioner's favor in a habeas case provides a reasonable time in order to afford the State an opportunity to re-try the defendant or otherwise correct the constitutional infirmity." (citations omitted)).

46 *See* W.D. Okla. LCvR 72.1(a).

47 *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

Entered this 17th day of March, 2006.

Robert E. Bacharach
United States Magistrate Judge